# IN THE DISTRICT COURT OF THE UNITED STATES
## THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:11-cr-179-RJC-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| FRAZIER DERRING | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court upon Defendant's Motion to Dismiss, (Doc. No. 15), and the Government's response, (Doc. No. 17).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2010, the Grand Jury for the Western District of North Carolina returned a one-count indictment against Defendant Frazier Derring ("Defendant"), charging him with possession of a firearm after he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1). The government alleges[1] that Jasmine Lowery rented a car on August 3, 2010, which she failed to return and lent to her brother, Jeffrey Lowery. Jeffrey Lowery lent the car to Defendant, who states he did not know the car was stolen (failure to return rental car). On October 8, 2010, Defendant was speeding in the rental car when he was pulled over by North Carolina State Trooper Loukos. Upon discovering that Defendant's license was suspended and the car was stolen, Troopers Loukos and Nash arrested Defendant and searched the rental car.

---

[1] For purposes of this pretrial motion to dismiss, facts are taken in light most favorable to the government as the non-moving party. See United States v. Mills, 995 F.2d 480, 489 (4th Cir. 1993) (applying standard when indictment is challenged).

Nash found a loaded Hi-point, semiautomatic pistol, Model C-9, 9mm, Serial # P225497 in a shoe box in the trunk. Defendant initially denied ownership of the gun but when Nash handed the weapon to Loukos to check against records, Defendant allegedly said "It's mine. It's clean. I bought it from some guy." (Doc. No. 17 at 2). On the way to intake, Defendant stated that he was not worried about the car because he did not know it was stolen, he was more worried about the gun. (Id.).

In the instant motion, Defendant challenges the indictment on the following grounds: (1) 18 U.S.C. § 922(g)(1) violates the Second Amendment both facially and as applied to him; and (2) § 922(g)(1) exceeds the jurisdiction of the government defined in the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3. (Doc. No. 15 at 1).

## II. DISCUSSION

### A. Constitutionality of 18 U.S.C. § 922(g)(1)

18 U.S.C. § 922(g)(1) prohibits firearms possession by persons who have been convicted of an offense punishable by a term of imprisonment exceeding one year. The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Relying on District of Columbia v. Heller, 554 U.S. 570 (2008), Defendant contends that § 922(g)(1) violates his rights protected by the Second Amendment. (Doc. No. 15 at 1-2). In Heller, the Supreme Court upheld an individual's right to keep and bear arms under the Second Amendment, recognizing that the "core" of the Second Amendment's protections was "the right of law-abiding, responsible citizens to use arms in the defense of hearth and home." Heller, 554 U.S. at 635.

#### 1. Facial Constitutionality of § 922(g)(1)

Considering a facial constitutionality challenge to § 922(g)(9), the Fourth Circuit outlined a two-part standard for deciding post-Heller Second Amendment claims. See United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010). First, a court must determine "'whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee' . . . at the time of ratification." Id. (quoting United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)). If it does not, the law is constitutional. Id. "However, if the challenged law does not impose a burden on conduct falling within the scope of the Second Amendment's guarantee as historically understood," then a court proceeds to the second prong and applies "the appropriate form of means-end scrutiny." United States v. Staten, Case No. 2:09-cr-235, Doc. No. 95 (4th Cir. Dec. 5, 2011) (citing Chester, 628 F.3d at 680). While noting that Heller only rejected rational basis as the appropriate level of scrutiny, the Fourth Circuit held that a Second Amendment claim outside the "core right identified in Heller," defined as "the right of every *law-abiding, responsible* citizen to possess and carry a weapon for self-defense," warrants intermediate scrutiny. Chester, 628 F.3d at 683. (emphasis in original).

Like other constitutional rights, there are limitations on the Second Amendment right as identified in Heller. 554 U.S. at 626. Notably, the Supreme Court has twice stated that its decision in Heller should not be read "to cast doubt on longstanding prohibitions" such as "the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." See Heller, 554 U.S. at 626-27; McDonald v. City of Chicago, 130 S. Ct. 3020, 3047 (2010). The Heller Court defined this non-exhaustive, exemplary list of prohibitions as "presumptively lawful regulatory measures." Id. As such, § 922(g)(1) falls within the list of "presumptively lawful regulatory measures" identified in Heller.

3

However, the Fourth Circuit noted that Heller's "presumptively lawful regulatory measures" language and illustrative list of constitutional "long-standing prohibitions" are subject to two possible interpretations. Chester, 628 F.3d at 679 ("It is unclear to us whether Heller was suggesting that 'longstanding prohibitions' such as these were historically understood to be valid limitations on the right to bear arms or did not violate the Second Amendment for some other reason."). Nonetheless, either of these interpretations is constitutionally valid under the Fourth Circuit's two-step standard for analyzing Second Amendment claims.

First, if the "presumptively lawful regulatory measures" are considered to be "historical limitations," they regulate conduct not within the Second Amendment's protections. Id. at 680. Accordingly, as these regulations would not burden "conduct within the Second Amendment as historically understood," they would be valid under the first prong of the Chester standard. Id. Second, even if the listed regulations are not considered to be "historical limitations" which burden conduct protected by the Second Amendment, they still could be viewed as "presumptively lawful regulatory measures" as they are "valid on their face under any level of means-end scrutiny applied." Id. at 679. Thus, the regulations would presumably pass the second prong of the standard's application of the "appropriate form of means-end scrutiny." Id. at 680. Therefore, under either of these two interpretations, § 922(g)(1), a "presumptively lawful regulatory measure," is facially constitutional.

2. As Applied Constitutionality of § 922(g)(1)

Moreover, regardless of whether or not § 922(g)(1) is interpreted to be a "historical limitation" on the right of felons to possess firearms, § 922(g)(1) is constitutional as applied to Defendant. Applying the first part of the Chester standard, the Court must determine whether § 922(g)(1) "imposes a burden on conduct falling within the scope of the Second Amendment's

4

guarantee' . . . at the time of ratification." Id. at 680 (quoting Marzzarella, 614 F.3d at 89). It is undisputed that § 922(g)(1) is a categorical ban on all firearm possession for certain persons. Id. ("Section 922(g)(9), like the felon-dispossession provision set forth in § 922(g)(1), permanently disarms an entire category of persons."). Accordingly, for such categorical bans, the initial question is "whether a person, rather than the person's conduct, is unprotected by the Second Amendment." Id. While the Government attempts to present historical evidence that convicted felons were prohibited from possessing firearms at the time of the Second Amendment's ratification, the Fourth Circuit has previously stated that such evidence is inconclusive. Id. ("[I]t appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons.").

As such, if the inconclusive historical evidence renders Defendant's Second Amendment rights intact, the Court must proceed to the second part of the Chester standard and apply some form of heightened scrutiny to his as-applied challenge to § 922(g)(1). Id. at 681-82. Rational basis review is inappropriate here. See Heller, 554 U.S. at 628 n.27. The Fourth Circuit, in addressing a category of persons (domestic violence misdemeanants) who were not within the exemplary list of those persons as to whom regulation is presumptively constitutional, applied the intermediate scrutiny standard of review. See Chester, 628 F.3d at 683 (dismissing defendant's strict scrutiny argument and holding that a domestic violence misdemeanant was outside the "core right identified in Heller–the right of every *law-abiding, responsible* citizen to possess and carry a weapon for self-defense," by virtue of his criminal history of domestic violence (emphasis in original)); see also United States v. Pruess, 416 F. App'x 274, 275 (4th Cir. 2011) ("In applying this prong of the analysis to a regulation that prohibits the possession of

5

firearms by felons, a district court should apply intermediate scrutiny to determine whether 'there is a reasonable fit between the challenged regulation and a substantial government objective.'" (quoting Chester, 628 F.3d at 683)); United States v. Williams, 616 F.3d 685, 692 (7th Cir. 2010) (using intermediate scrutiny to analyze an as-applied challenge to § 922(g)(1)); United States v. Oppedisano, No. 09-CR-0305, 2010 WL 4961663 (E.D.N.Y. November 30, 2010) (same). Likewise, Defendant is not within the "core right identified in Heller" by virtue of his alleged three felony convictions. See (Doc. No. 17 at 2) ("defendant has been convicted of the following felonies: Felonious Assault with a Firearm on July 29, 1999, Second Degree Robbery on October 1, 1999, and Possession of Crack Cocaine on January 24, 2004"). Therefore, intermediate scrutiny is appropriate here.

Under intermediate scrutiny, the Government must prove that "there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." Id. at 683. It is well-established that protecting the safety and lives of citizens and preventing crime is a substantial government objective. See United States v. Solerno, 481 U.S. 739, 750, 754-55 (1987). Additionally, as the Government notes, Congress's interest in protecting "the safety and indeed the lives of its citizens" is not merely "substantial" but "compelling." United States v. Salerno, 481 U.S. 739, 750, 754-55 (1987). For at least 70 years, Congress has sought to protect this interest by preventing firearms from falling into dangerous hands. Cf. Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 82-83 (1946) ("the legislature may choose not to take the chance that human life will be lost"). To achieve this task, Congress may need to make "predictive judgments" about the risk of dangerous behavior, and such judgments are entitled to "substantial deference" by the courts. Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 665 (1994). Further, the primary role in making such judgments properly falls to Congress, not

the courts, because Congress is "far better equipped than the judiciary" to collect, weigh, and evaluate the relevant evidence, and to formulate appropriate firearms policy in response. Id. at 665-66. The Court finds that the government has established that reducing gun violence is a substantial government objective.

With regard to the "reasonable fit" portion of intermediate scrutiny, the government need not prove that § 922(g)(1) is the least intrusive means of reducing gun violence or that there be no burden whatsoever on Defendant's "assumed arguendo right under the Second Amendment to keep and bear arms in his home for self-defense." Staten, Case No. 2:09-cr-235, Doc. No. 95 at 11 (emphasis in original) (citing United States v. Masciandaro, 638 F.3d 458, 474 (4th Cir. 2011) ("intermediate scrutiny does not require that a regulation be the least intrusive means of achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question"). "In other words, the fit needs to be reasonable; a pefect fit is not required." Staten, Case No. 2:09-cr-235, Doc. No. 95 at 12. As the government notes, the Gun Control Act of 1968, of which § 922(g)(1) is a part, sought to "keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" United States v. Lunsford, No. 2:10-cr-182, 2011 WL 145195, at *6 (quoting United States v. Small, 544 U.S. 385, 393 (2005)). In a light most favorable to the government for purposes of the instant motion, Defendant is a thrice convicted felon whose loaded firearm was found in the trunk of a stolen car. Section § 922(g)(1)'s permanent disarmament of felons, such as Defendant, is a reasonable means of achieving the government's objective of protecting the safety of citizens and deterring future violence and crime. Accordingly, § 922(g)(1) survives intermediate scrutiny and is constitutional as applied to Defendant.

B.     Commerce Clause

To prove a violation of 18 U.S.C. § 922(g), the government must prove that the firearm or ammunition in question was "in or affecting commerce," or that the firearm or ammunition "has been shipped or transported in interstate or foreign commerce." Defendant concedes that the "statutorily required nexus between the possession of a firearm by a convicted felon and commerce" can be satisfied by evidence that the gun had once traveled in interstate commerce. (Doc. No. 15 at 2). Indeed, this is a well established principle. See United States v. McQueen, 445 F.3d 757, 759 (4th Cir. 2006), cert. denied, 549 U.S. 857 (2006); United States v. Nathan, 202 F.3d 230, 234 (4th Cir. 2000), cert. denied, 529 U.S. 1123 (2000); United States v. Verna, 113 F.3d 499, 502 (4th Cir. 1997). Defendant argues that this is inconsistent with United States v. Lopez, 514 U.S. 549 (1995) and United States v. Morrison, 529 U.S. 598 (2000), and that Congress exceeded its authority under the Commerce Clause. However, every circuit post-Lopez has held that Congress has authority under the Commerce Clause to enact § 922(g)(1). See United States v. Wells, 98 F.3d 808, 811 (4th Cir. 1996); United States v. Smith, 101 F.3d 202, 215 (1st Cir. 1996), *cert. denied*, 520 U.S. 1160 (1997); United States v. Trzaska, 111 F.3d 1019, 1028 (2d Cir. 1997); United States v. Gateward, 84 F.3d 670, 672 (3d Cir.), *cert. denied*, 529 U.S. 907 (1996); United States v. Rawls, 85 F.3d 240, 242 (5th Cir. 1996); United States v. Murphy, 107 F.3d 1199, 1211 (6th Cir. 1997); United States v. Barry, 98 F.3d 373, 378 (8th Cir. 1996), *cert. denied*, 519 U.S. 1140 (1997); United States v. Beasley, 346 F.3d 930, 939 (9th Cir. 2003), *cert. denied*, 542 U.S. 921 (2004); United States v. Bolton, 68 F.3d 396, 400 (10th Cir. 1995), *cert denied*, 516 U.S. 1137 (1996); United States v. Adams, 91 F.3d 114, 114 (11th Cir.), *cert. denied*, 519 U.S. 1047 (1996).

Defendant's argument that the holding in United States v. Morrison calls into question

the constitutionality of § 922(g) is also unpersuasive. As the government notes, the Fourth Circuit has explicitly stated that Morrison does not affect its prior opinions regarding § 922(g). United States v. Gallimore, 247 F.3d 134, 138 (4th Cir. 2001) (rejecting defendant's argument that, post- Lopez, the Supreme Court required more than simply showing that a firearm was manufactured in another state). In doing so, the Fourth Circuit joined other circuits who held that Morrison provided no basis for revisiting the post-Lopez consensus that proof of a firearm's prior movement in interstate or foreign commerce satisfies both the "in or affecting commerce" element of § 922(g) and the Constitution. See United States v. Santiago, 238 F.3d 213, 216-17 (2d Cir. 2001) (per curiam); United States v. Dorris, 236 F.3d 582, 585-86 (10th Cir. 2000); United States v. Napier, 233 F.3d 394, 401-02 (6th Cir. 2000); United States v. Jones, 231 F.3d 508, 514-15 (9th Cir. 2000); United States v. Wesela, 223 F.3d 656, 660 (7th Cir. 2000), cert. denied, 531 U.S. 1174 (2001); United States v. Singletary, 268 F.3d 196, 204 (3rd Cir. 2001); United States v. Wilkerson, 411 F.3d 1, 9-10 (1st Cir. 2005).

This analysis has not changed in light of Heller. See United States v. Brunson, No. 07-4962, 2008 WL 4180057 at *1 (4th Cir. Sept. 11, 2008) (rejecting Commerce Clause and Second Amendment challenges to § 922(g)(1) in light of Heller). Indeed, Heller's recognition of an individual's right to keep and bear arms does not increase the minimal nexus requirement set forth in United States v. Scarborough, 431 U.S. 563, 577 (1977) ("[T]here is no question that Congress intended no more than a minimal nexus requirement."). Accordingly, § 922(g)(1) remains a valid exercise of Congress' commerce power.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED that** Defendant's Motion to Dismiss, (Doc. No. 15),

is **DENIED**.

Signed: December 7, 2011

Robert J. Conrad, Jr.
Chief United States District Judge